Russ v. Gilman.

---

## John Russ & al. vs. Allen Gilman & al.

The officer's return of an extent on land is fatally defective, and no title passes thereby, if it do not substantially state, that the appraisers were *disinterested* and *discreet* men, and freeholders *within the County.* And the mere return of "all of whom being *reputable* freeholders," is not a compliance with the requirements of the statute.

The Court, in the exercise of their discretionary power to grant leave to amend, declined to permit an amendment, to remedy the defects, after the lapse of twenty-six years.

WRIT of entry. The demandants are the heirs of *George Ulmer,* who died in *March,* 1826, and claimed title in *Ulmer,* by virtue of the levy of an execution in his favor against one *Henshaw, July* 14, 1813. *Henshaw's* title was under a levy on the same premises, made on the same 14th of *July,* 1813, by virtue of an execution in his favor against one *Holyoke.* The officer's return on the execution against *Holyoke,* after stating the names of the appraisers, and by whom chosen, says, " all of whom being *repu-*

*table freeholders;* I have delivered possession," &c. His return on the execution, *Ulmer* v. *Henshaw*, states, after the names and choice of the appraisers, " all of whom being disinterested and discreet freeholders; I have delivered," &c. No part of the proceedings on either execution shew the place of abode of the appraisers, or whether they lived within or without the county in which the land was situated. The defendants objected, that no estate passed by these returns. · The demandants moved for leave for the officer to amend the returns on the executions, and offered to prove that the appraisers were disinterested and discreet freeholders within the county. No title of *Holyoke* was shown. The tenants claimed under a deed from the Commonwealth to *Stetson, Lapish* and *French*, dated *March* 2, 1802, by several mesne conveyances. It was agreed, that the Court should enter such judgment, as the legal rights of the parties authorized or required.

*J. Williamson* argued for the demandants, and cited 4 *Kent*, 429; 5 *Johns. R.* 489; 6 *Mass. R.* 418; 15 *Mass. R.* 549; 19 *Johns. R.* 55; 5 *Johns. R.* 489; 13 *Johns. R.* 289; 5 *Johns. R.* 327; 6 *Greenl.* 162; 13 *Maine R.* 111.

*Gilman & F. Allen* argued for the tenants, and cited 14 *Mass. R.* 20; 3 *Mass. R.* 523; 11 *Mass. R.* 163; 7 *Pick.* 169; 6 *Greenl.* 452; 1 *Fairf.* 471.

The opinion of the Court was by

EMERY J.—The true question in this case is, whether the plaintiffs or defendants have the better title to the premises defended.

Notwithstanding the levy of *Ulmer* on the portion of the dwellinghouse built by *Holyoke*, we do not discover in the report, that the building had, in *Holyoke's* hands, any character but that of personal property. The levy made by *Henshaw* against *Holyoke*, and the levy by *Ulmer* against *Henshaw*, both effected on the 14th day of *July*, 1813, might, if no objection could be introduced against them, have given a seizin to *Ulmer*, provided *Holyoke* and *Henshaw* had the legal title. *Ulmer* died about the 16th of *March*, 1826. From the time of his levy to near the time of his death, he collected one third of the rent of the house which was on a lot of land in *Bangor*, 50 feet on *Exchange Street*, and 100 feet back. By the disclaimer, thirty feet only of the premises are in

controversy. If the testimony of *William Rice* were admitted, it would only prove, that about 1809, a dwellinghouse was built upon the premises, two thirds by *William & Charles Rice*, and one third by *Holyoke*. And that before and at the time of the levy, *Abner Taylor* occupied the house, and continued to occupy as tenant for one to one and a half years after the levy, and paid his rent two thirds to *Rice*, and one third to *Holyoke*, and to *Ulmer's* agent. We do not perceive, that this evidence would materially change the case. But *Mr. Rice* appears to be a warrantor to one of the defendants against persons claiming under said *Rice*.

The defendant exhibited a title from the Commonwealth of *Massachusetts*, dated *March* 2, 1802, to *Stetson, French* and *Lapish*. A deed dated *February* 20, 1815, from *William & Charles Rice*, to *Nathaniel Freeman*, conveying two thirds of the 30 feet in controversy. On the 2d of *Sept.* 1816, *Stetson, French* and *Lapish* convey to *Call, Treat*, and *William & Charles Rice*. But *Call* had previously, on the 23d of *June*, 1815, conveyed all his interest in the land in question to *William Rice* and *Charles Rice*, " being, as the deed says, part of the lots I hold by bond from *Stetson, Lapish* and *French*, in common with the said *William & Charles*, and *Joseph Treat*, with all the buildings, privileges and appurtenances thereunto belonging." On the 11th of *July*, 1818, *Treat* conveyed his interest to *William & Charles Rice*. The *Rices* on the 26th of *Nov.* 1819, conveyed one third of the contested estate to the defendant, *Gilman*, and to him the executors of the will of *Freeman*, conveyed the remaining two thirds of the thirty feet on the 1st of *May*, 1828; which made *Gilman* the owner of the whole thirty feet, unless the plaintiffs can hold by such title as they bring before us. One third of the thirty feet has passed by mesne conveyances, from said *Gilman* to *Rice*, the other defendant. No disseizin has intervened to prevent the operation of these deeds.

The defendants insist, that to the validity of the return of the levy on the execution of *Henshaw* against *Holyoke*, there are fatal objections. The principal one is, that the return states, that the appraisers were reputable freeholders, but does not state, that they were disinterested and discreet freeholders of the then county of *Hancock*. And that in the return on the execution of *Ulmer*

against Henshaw, it is not stated, that the appraisers were freehold-ers of that county.

Unless this be alleged in the return, we must adjudge the levy void. Because it is a rule of law, that when a statute title is at-tempted to be gained to real estate, every requisite of the statute must be substantially shewn in the return. The cases cited by the defendants and their counsel, fully sustain their objections. And we must overrule the motion to amend the return, at the distance of nearly 26 years. According to the agreement of the parties, judgment must be rendered for the defendants.